## No. 15,084.

### CROLL AND COMPANY, INC. *v.* MILLER.
(134 P. [2d] 202)

Decided January 18, 1943.  Rehearing denied February 15, 1943.

Mr. GEORGE H. LERG, Mr. OVAL A. PHIPPS, for plaintiff in error.

Mr. ROY A. PAYTON, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

CROLL and Company, Inc., plaintiff in error, plaintiff below, brought this action to quiet title to certain improved land known as the Rye Ranch in Pueblo county. This is the same property as that involved in the case

of *Estep v. Croll,* 100 Colo. 442, 68 P. (2d) 31, and we refer to the opinion in that case for background in our consideration on the present review. It will be noted that the parties are not the same, although the stock of the company here involved is owned mostly by the same Croll, who was defendant in the previous case, and his family. Reference will be made to the parties as they appeared below.

As will be noted in the prior adjudication, we affirmed a judgment in favor of defendant in the case, wherein plaintiff was seeking to enjoin foreclosure of a deed of trust held by Croll against Estep. The case at hand involves the validity of a note in the sum of $2,875 secured by a deed of trust given by Jennie May Estep, while she had title and was in possession, to the public trustee for the use and benefit of J. E. Miller, defendant in error here, almost a year before the suit of *Estep v. Croll, supra,* was instituted, the instrument being recorded September 9, 1933.

The trial court adjudged the deed of trust given for the use of Miller securing payment of his note to be valid, subject to an alleged prior encumbrance of $338.80 in favor of Croll, otherwise the title was quieted in plaintiff. Plaintiff seeks reversal on a writ of error, and "cross-specification of points" have been filed by Miller in which it is alleged that the court erred in holding and finding that his deed of trust was subject to the claim of Croll in the sum of $338.80 and interest. The parties are in apparent agreement that the Estep-Croll case, supra, is not res judicata as to Miller, because plaintiff admits in the statement of the case that Miller was not a party in the first litigation although he insists that the former case is res judicata on "the fraudulent and voidable nature of the title she [Mrs. Estep] possessed at that time." Plaintiff also concedes that if Miller was a bona fide purchaser he is entitled to prevail. This, we think, is the controlling question in the case.

██ Plaintiff also raised the question of burden of proof. As a basis for his argument on this point, he relies upon certain language in the opinion of the trial court, to wit: "It seems to the court that the plaintiff having alleged that said Miller took title with knowledge of the defects in the title of Jennie May Estep, assumed the burden of proving the same, and that the defendant Miller had a right to rely on the record."

Assuming, arguendo, that this was error, it was cured by the court during the trial as is evidenced by the following proceedings had after plaintiff rested the case: "Mr. Payton: Defendant J. E. Miller now moves the Court for judgment in favor of the defendant for the reason that on the pleadings and on the evidence heretofore given by the plaintiff, who has rested his case, there is not sufficient evidence, and the record is not such as to justify any other judgment, except in favor of the defendant, sustaining his mortgage of September 8, 1933. The Court: As a matter of fact, Mr. Payton, even though they had given no testimony, you would still have to go forward with this, would you not? Mr. Payton: I think that is correct. I wanted to protect my record. The Court: The motion will be overruled."

With the overruling of the motion, defendant Miller proceeded with his proof, which included the introduction in evidence of the note for $2,875, the deed of trust securing payment of same, and testimony concerning the consideration therefor, which consisted of $625 in cash which Miller advanced to Estep, and the assumption by the Esteps of the payment of substantial commissions on two other real estate deals in which the parties were involved, and on which judgment had been obtained in the sum of $2,250. Mrs. Estep in her explanation of this stated: "Q. So you don't know whether it was a two way conversation, or a three, or a four? A. All I know is when they came back I was in the room; Mr. Sills was in there; Mr. Miller was in there; and Mr. Abell was in there, and they told me that if I

signed this they would include the commission, and we had told them we were willing to pay the commission if they thought it was within reason, but we thought it was too high. Then they said if we would go ahead and put it altogether they would drop the case that Mr. Miller had against Mr. Estep. * * * Q. Mr. Miller. The whole slate would be clean if you signed this note? A. Yes, and would try to get our Federal Land Bank loan. Q. And Mr. Estep was right there? And understood that? A. He was right there * * *. Q. At that time you were the owner of these premises near Rye in Pueblo county? A. Yes * * *. Q. In any event, your understanding on September 8, 1933, was that all controversies existing between you and Mr. Sills and Mr. Miller was to be covered and cleaned up with this deed of trust of that date? A. Yes."

So much for consideration. Plaintiff sought to show that Miller took his security with notice of the deficiencies of Estep's title. Mrs. Estep was asked the question, "How did Mr. Miller * * * know about this suit that Mr. Glaze had brought down there?" She replied: I can't see how Mr. Miller could have helped but know it." On motion this reply was stricken. Other than this there was a mere intimation that Miller was aware of the deficiencies in the title. Mrs. Estep also testified that at the time, Croll had raised no objection to the title.

The suggestion that Miller is charged with notice of the Rusler and subsequent conveyances which recognized an indebtedness to Croll, coupled with the suggestion in the Estep-Croll case, supra, that there was not a merger of the Rusler note when the land was reconveyed to Croll and Miller's claim here might be subservient to alleged indebtedness to Croll are answered, so far as Miller is concerned, by Croll's letter in which he says that he is merely holding the Rusler note and deed of trust as security for the $338.80 hereinafter mentioned.

■ Counsel for plaintiff also urge that Mrs. Estep signed under duress, but since they do not argue the point, and since the trial court said he did not think that the matter of duress had anything to do with the case, we do not pass upon it.

■ There remains, then, only the cross-specified point on the holding of the trial court that the deed of trust of Miller was subject to the claim of Croll in the sum of $338.80. The letter to Estep signed by Croll in relation thereto was as follows:

"This letter will evidence the fact that I hold promissory note dated July 1, 1931, for the principal sum of $4,765.00 signed by E. C. Rusler, payable to P. C. Croll, which is secured by a deed of trust duly recorded in the records of Pueblo county, Colorado, Record No. 485184, in Book 754 at Page 93, among said records, together with release deed executed by myself.

"You owe taxes on the land in Park county, Colorado, recently conveyed by you to me, amounting to $338.80, which you agreed to pay.

"Upon the payment of this amount in full by you, I will deliver to you the promissory note, deed of trust, and release above described and referred to; it being understood that I will hold said note and trust deed as collateral security for the payment of said sum of $338.80.

"P. C. Croll."

This letter was recorded March 24, 1934.

As appears from the face of this letter the claim for $338.00 bore no relationship to the land in question, and the letter was not placed of record until six months after the recording of Miller's deed of trust. While technically it constituted a cloud on the title, because of its having been recorded, the court had no authority to compel Miller to pay this amount. In effect it would be no different than requiring Miller to pay Croll's gro-

cery bill because Croll might have written a similar letter concerning it and had it recorded.

That portion of the decree whereby the court ordered that Miller's trust deed "is subject to the claim of P. C. Croll in the sum of $338.80, with legal interest from May 24, 1933," is reversed; otherwise, the judgment is affirmed.

MR. JUSTICE BURKE and MR. JUSTICE GOUDY concur.

MR. CHIEF JUSTICE YOUNG dissents.